**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| BONNIE WALLACE,<br><br>             Plaintiff,<br><br>v.<br><br>HOUSTON INDEPENDENT SCHOOL<br>DISTRICT,<br>and<br> ANGELA LEMOND FLOWERS<br>(In her individual capacity),<br><br><br>             Defendants. | Case No.:  **4:26-cv-03501** |

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
**RELIEF, AND DAMAGES UNDER 42 U.S.C § 1983**

1.      This is a civil rights action under 42 U.S.C. § 1983 seeking redress for a violation of the First Amendment. The action arises from the unconstitutional censorship and removal of Ms. Wallace from a Houston Independent School District ("HISD") Board of Trustees meeting on March 19, 2026, solely because of the content and viewpoint of her speech.

2.      Plaintiff, hereinafter Ms. Wallace, was addressing a posted agenda item, remained strictly within her allotted time, and caused no disruption whatsoever, yet she was interrupted, issued escalating warnings, and physically removed when she refused to abandon her criticism of HISD's library policies.

3.      Her remarks consisted of reading verbatim passages from *A Court of Silver Flames …* by Sarah J. Maas, a book with sexually explicit content that HISD itself had approved and placed in at least three school libraries, making these books accessible to minors—material the District deemed suitable for children but suddenly too offensive to be read aloud to adults at a

public meeting.

4.      This was textbook viewpoint discrimination: HISD silenced Ms. Wallace precisely because she demonstrated the hypocrisy of its own policies, proving that if the content was too explicit for adults, it was too explicit for children. Such conduct is "an egregious form" of content regulation that the First Amendment almost never tolerates. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

5.      The Supreme Court recently reaffirmed this principle in *Chiles v. Salazar*, 607 U.S. ___, No. 24-539, slip op. at 8–11 (Mar. 31, 2026),. where the Court held that a regulation reaching speech is subject to strict scrutiny even when the government characterizes its target as professional conduct.

6.      Ms. Wallace brings this action to vindicate her clearly established constitutional rights, to halt HISD's ongoing practice of viewpoint-based censorship during public comment, and to obtain meaningful relief, including declaratory and injunctive relief, nominal and compensatory damages, punitive damages against the individual Defendant, and attorneys' fees under 42 U.S.C. § 1988.

7.      This case, brought under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983, is about more than just the violations of Ms. Wallace's individual rights: it implicates the right of all Americans to freely speak and seek redress from their government.

## JURISDICTION AND VENUE

8.      The action arises under the Constitution and laws of the United States. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, with supplemental jurisdiction over the Texas-law claims under 28 U.S.C. § 1367.

9.      This Court has the authority to award declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court. Ms. Wallace seeks damages under 42 U.S.C. §§ 1983 and 1988 and under the general legal and equitable powers of this Court.

10.     Venue is proper in the Southern District of Texas, under 28 U.S.C. § 1391(b), as all events giving rise to this action occurred in Houston, Harris County, Texas, where all Defendants acted under color of state law and where Ms. Wallace's injuries were suffered. The Court therefore has personal jurisdiction over all Defendants.

## THE PARTIES

11.     Plaintiff Bonnie Wallace (Ms. Wallace) is an adult Texas citizen. She is a taxpayer, a community parent and child rights activist, and a concerned parent who regularly participates in School Board meetings to address matters of public concern, including the educational environment and library materials available to children.

12.     Defendant Houston Independent School District ("HISD") is a political subdivision of the State of Texas and a "person" subject to suit under 42 U.S.C. § 1983. HISD is responsible for the policies, customs, and practices governing public comment at Board meetings, including policies and discretionary authority exercised during the March 19, 2026, Board meeting.

13.     Defendant Angela Lemond Flowers is the Vice President of the HISD Board of Trustees and served as the presiding officer during the March 19, 2026, Board meeting. She is sued in her individual capacity for damages. At all relevant times, Ms. Flowers acted under color of state law and exercised authority delegated to her by HISD.

14.     Defendants are located within Harris County and within the jurisdiction of this

Court.

## FACTUAL BACKGROUND

15.    HISD conducts public meetings subject to the Texas Open Meetings Act ("TOMA"), which requires governmental bodies to allow public comment on posted agenda items. HISD's Board meetings include a public comment period during which members of the public may address the Board on matters of public concern.

16.    The public comment period at HISD Board meetings provided Ms. Wallace with an ideal forum where she could freely address the Board and the public on matters of public concern. Indeed, Ms. Wallace participated in these meetings because there is no similar location that reaches the same audience or allows the same direct engagement with district policymakers as effectively.

17.    On March 19, 2026, Ms. Wallace attended a regular HISD Board of Trustees meeting in Houston, Texas. The agenda included Item No. 2 concerning instructional materials and library content. Ms. Wallace signed up to speak on this item. The law is clear that a board shall allow each member of the public who desires to address the board regarding an item on an agenda for an open meeting of the board to do so before or during the board's consideration of the item. Tex. Gov't Code § 551.007.

18.    When Ms. Wallace's name was called, she approached the podium and began her remarks. She first explained that her comments would include explicit language and suggested that any children present leave the room. This warning demonstrated her intent to speak responsibly and respectfully, even while addressing sensitive subject matter.[1]

---

[1] https://archive.org/details/hisdtx-HISD_School_Board_Meeting_-_03-19-26 (at 2hr:56minute mark)

19.      Ms. Wallace then read verbatim passages from an HISD-approved book, *A Court of Silver Flames,* available in at least three school libraries. The passages contained explicit sexual content, including phrases such as "***his cock was enormous***", "**s***he wrapped her hands around his cock***", and "***the sight of her with his cock between her lips snapped something***." These were not Ms. Wallace's words—they were the District's own library material, or the District's speech.[2]

20.      HISD's video recording of the March 19, 2026, meeting confirms that Ms. Wallace spoke calmly, in a normal tone of voice, remained strictly within her allotted time, and addressed only the posted agenda item. Ms. Wallace was allotted approximately one minute under HISD's adjusted public-comment procedures and had been speaking for approximately ten seconds  when Defendant Flowers first interrupted her. She did not disrupt the meeting in any way. Her purpose was clear and political: to illustrate the hypocrisy of HISD's library policies and to argue that material too explicit to be read aloud to adults at a public meeting is too explicit for children in school libraries.



21.      While Ms. Wallace was delivering her protected remarks—exercising her First

---

[2] *Id*.

Amendment right to speak during the public-comment period—the presiding officer, **Angela Lemond Flowers**, acting under color of state law and municipal authority, abruptly interrupted her and ordered her to stop. Ms. Wallace explained that the explicit content she was quoting was the very point of her criticism. Nevertheless, Ms. Flowers issued escalating warnings, compelling Ms. Wallace to cease speaking before she could complete her comments. Ms. Wallace complied and returned to her seat. Even then—while Ms. Wallace was seated, silent, and no longer addressing the Board—Ms. Flowers ultimately ordered officers to remove her from the meeting.

22.     Three police officers escorted Ms. Wallace out of the building to her car and demanded she leave the district parking lot immediately.





23.    State law is clear that it is a criminal offense under Tex. Penal Code § 42.05 for a person with the intent to prevent or disrupt a lawful meeting to obstruct or interfere with the meeting by physical action, verbal utterance, or electronic disturbance.

24.    Ms. Wallace was not removed for disruption, exceeding her time, or speaking off topic. She did not act with intent to prevent or disrupt the meeting, did not obstruct or interfere with its proceedings by physical action, verbal utterance, or electronic disturbance, and satisfied none of the elements of Tex. Penal Code § 42.05. She was removed solely because of the content and viewpoint of her speech—specifically, her criticism of HISD's decision to purchase with taxpayer dollars and place sexually explicit books in school libraries accessible to minors.

25.    Defendant enforced policies, customs, and practices that vest the presiding officer with unbridled discretion to interrupt, silence, or remove speakers based on subjective judgments of "decorum" or "offensiveness."

26.    A board may adopt reasonable rules regarding the public's right to address the board, including rules that limit the total amount of time that a member of the public may address the board on a given item. Tex. Gov't Code § 551.007. Except as permitted by this policy and the

7

Board's procedures on public comment, an individual's comments to the Board shall not exceed two minutes per meeting. Although speakers have a maximum of two minutes each, once the number of speakers exceeds 30, speaker time shall be reduced to one minute each. When necessary for effective meeting management or to accommodate a large number of individuals wishing to address the Board, the presiding officer may adjust public comment procedures. However, no individual shall be given less than one minute to make comments.

27.    HISD's BED(LOCAL) and BED(LEGAL) expressly limit the presiding officer to reasonable, time-based rules and meeting-management adjustments. Defendants violated BED(LOCAL) and BED(LEGAL) because Ms. Flowers exercised unbridled discretion that produced viewpoint-based removal rather than any neutral time or management rule.

28.    HISD's censorship of Ms. Wallace occurred in a context of heightened public concern regarding sexually explicit materials in school libraries. This is evident from the comment of the next speaker at the March 19, 2026 meeting, Dr. Rick Scarborough, president of Recover America, the former pastor of First Baptist of Pearland, and leader in the Christian community in the Houston area for the past four decades, who rose up and spoke against the sexually explicit material being provided to HISD students through the library system. Dr. Scarborough informed the board that "in more than 50 years in full-time ministry, he had never seen a Biblical pastor who supports children having access to books that are so explicit they are banned in our prisons here in Texas." Numerous parents and community members had raised similar concerns about explicit books in the months leading up to the March 19, 2026, meeting. HISD officials were aware of this public debate. Defendants' awareness of this politically contentious debate is probative of their motive to suppress critical viewpoints during public comment and supports the inference that Ms. Wallace's removal was viewpoint-based rather than content-neutral.

8

29.     Defendants' actions caused an ongoing chilling effect on Ms. Wallace's willingness to participate in HISD meetings. Ms. Wallace reasonably fears that if she attempts to speak again, she will be censored or removed, or, worse still, charged with trespass, which has become very common recently with school boards that want to chill undesired voices. Ms. Wallace's removal also caused reputational harm within the community, as witnesses may have incorrectly believed she violated meeting rules or engaged in disruptive behavior.

## CAUSES OF ACTION

### COUNT ONE
### FIRST AMENDMENT: Content-based and Viewpoint Discrimination.

30.     Ms. Wallace hereby incorporates paragraphs 16 through 30 for this Count only.

31.     Ms. Wallace engaged in protected political speech on a matter of public concern during the designated public comment period of an HISD Board meeting. By allowing public comment on posted agenda items, HISD created at least a limited public forum in which the government may not engage in content-based or viewpoint-based discrimination. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45–46 (1983). Where, as here, the public-comment period is opened to address library-policy matters, it is a quintessential limited public forum subject to the viewpoint-neutrality requirement. See *Mejia v. Lafayette Consol. Gov't*, 2025 WL 890525, at *5–6 (W.D. La. Mar. 20, 2025) (applying Fairchild to library-board public-comment session and holding that presiding officer cannot discriminate based on viewpoint).

32.     Viewpoint discrimination is strictly prohibited. When a governmental body convenes a public meeting to conduct public business and hear citizen views, it may not discriminate against speakers based on the content or viewpoint of their speech. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828–29 (1995); *City of Madison Joint Sch. Dist. No. 8 v. Wis. Emp. Rel. Comm'n*, 429 U.S. 167, 174–76 (1976).

33.    Defendants removed Ms. Wallace solely because of the content and viewpoint of her remarks; specifically, her criticism of HISD's decision to purchase with taxpayer dollars and place sexually explicit materials in school libraries. Ms. Wallace caused no disruption, exceeded no time limit, and violated no neutral procedural rule.

34.    This was a core political speech fully protected by the First Amendment. The Fifth Circuit has held that a presiding officer who removes a speaker from a limited public forum because of the speaker's viewpoint violates clearly established First Amendment law. Heaney v. Roberts, 846 F.3d 795, 801–02 (5th Cir. 2017); see also Fairchild v. Liberty Indep. Sch. Dist., 597 F.3d 747, 758 (5th Cir. 2010) (regulation in a limited public forum must be viewpoint-neutral and reasonable in light of the forum's purpose).

35.    Content-based restrictions are presumptively unconstitutional. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The Supreme Court recently reaffirmed that the government may not silence speech simply because it disfavors the viewpoint expressed or finds the content uncomfortable. *Chiles v. Salazar*, 607 U.S. ___, No. 24-539, slip op. at 8–11 (Mar. 31, 2026).

36.    HISD's attempt to justify Ms. Wallace's removal as "decorum enforcement" cannot withstand First Amendment scrutiny. As *Chiles* confirms, a government regulation that reaches speech does not escape strict scrutiny merely because the government labels its target as conduct or recasts viewpoint-based suppression as enforcement of "decorum." Slip op. at 8–11.

37.    Because Ms. Wallace's removal was based solely on the content and viewpoint of her speech, Defendants violated clearly established First Amendment law. A reasonable official would have understood that such censorship is unconstitutional. By March 19, 2026, every reasonable presiding officer within the Fifth Circuit was on notice — by virtue of *Chiu v. Plano Indep. Sch. Dist.,* 260 F.3d 330, 346 (5th Cir. 2001), *Fairchild v. Liberty Indep. Sch. Dist.,* 597

F.3d 747, 758 (5th Cir. 2010), *Heaney v. Roberts,* 846 F.3d 795, 801–02 (5th Cir. 2017), *and Robinson v. Hunt County*, 921 F.3d 440, 447 (5th Cir. 2019); and, most recently and directly, *Biggers v. Massingill*, 2025 WL 429974, at *2 (5th Cir. Feb. 7, 2025) (unpublished) (reversing grant of qualified immunity where presiding officer silenced speaker under purportedly neutral "decorum" rule, holding that "if proved, that would clearly violate the First Amendment"); see also *Mejia v. Lafayette Consol. Gov't*, 2025 WL 890525, at *9–10 (W.D. La. Mar. 20, 2025) (applying *Heaney* to deny qualified immunity to library-board president who silenced speaker under pretextual decorum justification) —that removing a non-disruptive speaker from a school-board public-comment period because of the viewpoint of her remarks violates the First Amendment. HISD itself was further on notice from *Monroe v. Houston Indep. Sch. Dist.,* 2019 WL 13252407 (S.D. Tex. July 19, 2019), *and Monroe v. Houston Indep. Sch. Dist.,* 2021 WL 9879370 (S.D. Tex. Mar. 11, 2021), in which HISD itself litigated First Amendment claims arising from its exclusion of a speaker from Board meetings. *See Heaney,* 846 F.3d at 802 (right to be free from viewpoint discrimination by the presiding officer of a limited public forum is clearly established). Defendant Flowers is therefore not entitled to qualified immunity.

**COUNT TWO**
**FIRST AMENDMENT RETALIATION**

38.     Ms. Wallace incorporates paragraphs 16 through 30 for this Count only.

39.     Ms. Wallace engaged in protected activity by speaking critically about HISD's library policies at a public Board meeting. Defendants took adverse action against Ms. Wallace by interrupting her, censoring her, and physically removing her from the meeting.

40.     Such actions would chill an individual from engaging in similar speech in the future. Ms. Wallace has experienced an ongoing chilling effect, including fear of future removal or trespass charges, and reputational harm within the community.

11

41. Defendants acted because of Ms. Wallace's protected speech, in violation of the First Amendment. Where a plaintiff shows that protected speech was a substantial or motivating factor in an adverse government action, the burden shifts to the defendant to show the same action would have been taken absent the protected speech. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). For the reasons stated in Count One, Defendant Flowers is not entitled to qualified immunity.

## COUNT THREE
## MUNICIPAL LIABILITY (MONELL)

42. Ms. Wallace incorporates paragraphs 16 through 30 for this Count only.

43. HISD is liable under 42 U.S.C. § 1983 because Ms. Wallace's constitutional injury was caused by official municipal policies, customs, and practices governing public comment at Board meetings. A municipality is liable under § 1983 when execution of its policy or custom inflicts the constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). These HISD policies were enacted, adopted, and enforced by HISD's governing body and expressly delegated to the presiding officer. A plaintiff must show that the deprivation of a federally protected right was caused by action taken pursuant to official municipal policy to establish liability under 42 U.S.C. § 1983. Here, Ms. Wallace satisfies this requirement because Defendant's policies governing public comment constitute an official municipal policy enacted by and directly attributable to HISD's governing body, and its enforcement directly caused the deprivation of her First Amendment rights to free speech.

44. HISD's BED(LEGAL) and BED(LOCAL) policies vest the presiding officer with unbridled discretionary authority to interrupt, silence, or remove speakers based on subjective judgments of "decorum," "offensiveness," or "inappropriate content," without defining these terms. This complete lack of objective standards renders the policies unconstitutionally vague on

their face and facilitates viewpoint-based enforcement. HISD's policies, customs, and practices do not clearly define "disruption," "decorum," or "inappropriate content," leaving these terms open to subjective interpretation. Neither does HISD's BED(LOCAL) nor BED(LEGAL) contain definitions of "decorum," "disruption," or "inappropriate content," rendering them unconstitutionally vague and granting the presiding officer unbridled discretion in violation of the First Amendment. A regulatory scheme vesting government officials with unbridled discretion over First Amendment–protected expression is facially unconstitutional. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757–58, 769–70 (1988); see also *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 (1992). HISD's policies fall squarely within this prohibition.

45. These policies were the moving force behind Ms. Wallace's removal. HISD enforced them against Ms. Wallace when she read verbatim from an HISD-approved library book during public comment, resulting in her removal solely because of the content and viewpoint of her speech. This enforcement pattern demonstrates that HISD's policies directly caused the constitutional violation. Even if the policies were not facially unconstitutional, municipal liability would still be established under *Monell*. The policies, as official policy and longstanding custom, were the direct cause of the constitutional violation, as evidenced by their enforcement against Ms. Wallace for reading from an HISD-approved book during public comment, which resulted in her removal. This enforcement pattern confirms the policies as the "moving force" behind the violation, satisfying Monell's requirements. See *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *Piotrowski v. City of Houston,* 237 F.3d 567, 579 (5th Cir. 2001).

46. HISD's policies are content-based because they distinguish between speech based on its communicative content, specifically targeting criticism of district library policies while

13

allowing favorable viewpoints. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The Supreme Court recently reaffirmed in *Chiles*, 607 U.S. \_\_\_, No. 24-539 (Mar. 31, 2026) that such viewpoint discrimination is categorically impermissible.

47.    HISD's policies, customs, and practices are not reasonable time, place, and manner restrictions because they impermissibly restrict speech based on content and viewpoint. HISD's policies, customs, and practices are not narrowly tailored to serve a significant governmental interest because there is no limit on their effect on protected speech in light of any specific danger or goal of the District. HISD's policies, customs, and practices do not adequately allow for alternative means of effective exercise of Ms. Wallace's political free speech rights. Defendant's policies, customs, and practices restrict peaceful free speech that is not threatening, violent, or unsafe.

48.    HISD's policies, customs, and practices have a chilling effect on constitutionally protected speech. The policies vest unbridled discretion in the presiding officer to interrupt, silence, or remove speakers based on subjective judgments, chilling the speech of anyone who seeks to exercise their rights for fear of removal and censorship. The application of HISD's policies to Ms. Wallace exemplifies the chilling effect. Because of the viewpoint-based removal, Ms. Wallace suffered significant damages and cannot resume exercising her right without a reasonable fear of further censorship. HISD's policies, customs, and practices prevent and deter Ms. Wallace from engaging in constitutionally protected speech, thereby inflicting continuing injury to Ms. Wallace. HISD's restriction also treats Ms. Wallace's political speech differently from other types of speech that are allowed in the same forum.

49.    Because HISD's policies are not narrowly tailored, lack objective standards, and fail to provide alternative channels for protected speech, they violate the First Amendment and

continue to chill Ms. Wallace's speech. HISD's policies, customs, and practices fail strict scrutiny, as they lack a compelling government interest and are not narrowly tailored.

## COUNT FOUR
## VIOLATION OF TEXAS OPEN MEETINGS ACT (Tex. Gov't Code § 551.007, 551.142)

50.     Ms. Wallace incorporates paragraphs 16 through 30 for this Count only.

51.     Ms. Wallace signed up to speak on Agenda Item No. 2 as required by TOMA. Tex. Gov't Code § 551.007(c) requires the Board to allow members of the public to address it on posted agenda items. The presiding officer removed Ms. Wallace based on the content and viewpoint of her remarks, not due to disruption or any procedural violation. Removal of a non-disruptive speaker addressing a posted agenda item violates § 551.007. Ms. Wallace seeks mandamus or injunctive relief under Tex. Gov't Code § 551.142 as an interested person to enjoin further violations.

## COUNT FIVE
## VIOLATION OF TEXAS CONSTITUTION, ART. I § 8 AND 27

52.     Ms. Wallace incorporates paragraphs 16 through 30 for this Count only.

53.     Article I, Section 8 of the Texas Constitution provides robust protections for free speech, and Section 27 protects the right to petition the government. Defendants censored Ms. Wallace because of her viewpoint, in violation of these constitutional guarantees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bonnie Wallace, respectfully requests that the Court:

A.     Enter a judgment and decree declaring Defendants' action constitutes an unconstitutional content and viewpoint-based discrimination in violation of Ms. Wallace's First Amendment-protected rights to free speech as described above;

B.     Enter a preliminary and permanent injunction enjoining Defendant Houston

Independent School District from applying and enforcing its unconstitutional removal of speakers whose viewpoint the District disapproves, including criticisms of District library policies;

C.      Award Ms. Wallace monetary damages to compensate her for her past, present, and continuing loss of free speech at HISD school board meetings, and for all other actual injuries Ms. Wallace has suffered because of Defendant's conduct with respect to the March 19, 2026, school board meeting;

D.      Award Ms. Wallace nominal damages as set forth in this Complaint;

E.      Award Ms. Wallace punitive damages against Defendant Angela Lemond Flowers in her individual capacity for the willful, malicious, or reckless deprivation of Ms. Wallace's constitutional rights;

F.      Award Ms. Wallace her reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law; and

G.      Grant any such further relief as the Court should find just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Ms. Wallace hereby demands a trial by jury of all issues so triable in this action.

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing First Amended Complaint is true and correct to the best of my personal knowledge. Executed on May 13, 2026, at Llano County, Texas. See 28 U.S.C. § 1746.

*/s/Bonnie Wallace*
Bonnie Wallace


**Dated:** May 13, 2026


16

Respectfully submitted,

*/s/ Martin K. Etwop*
Martin K. Etwop
(TX Bar # 24120215)
Jonathan K. Hullihan*
(TX Bar # 24120375)
REMNANT LAW
5900 Balcones Drive
Suite # 20675
Austin, TX  78731
Tel.:  (512) 720-6218
Fax:  (512) 200-4616
MEtwop@remnantlawfirm.com
JHullihan@remnantlawfirm.com

**Counsel for Bonnie Wallace**

\* Admission in the US SDTX pending

## CERTIFICATE OF SERVICE

I certify that on this 13th day of May, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record who are registered CM/ECF users.

I further certify that a true and correct copy of this filing was served on the following non-ECF participants by email:

Angela Lemond Flowers, Angela.Flowers@houstonisd.org

*/s/ Martin K. Etwop*
Martin K. Etwop